JOSEPH GEIL, Appellant, v. W. B. SMITH, Appellee.

**VENDOR AND PURCHASER:** Mental Incapacity and Undue Influence.
1 Evidence reviewed, and held quite insufficient to establish mental incompetency on the part of a vendor, or the exercise of undue influence on him.

**JUDGMENT:** Defensive Answer as Cross-Bill. Plaintiff may not complain of the granting of affirmative relief to defendant on a defensive *answer* and prayer for such relief, when the court, *without objection,* treated the answer as a cross-bill, and gave to defendant practically nothing more than he received *ipso facto,* by the dismissal of plaintiff's petition.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

NOVEMBER 26, 1920.

SUIT in equity to set aside a contract of sale of land, on the ground of the mental incapacity of the plaintiff and of undue

influence used by the defendant.   There was a decree for. the
defendant, and the plaintiff appeals.—*Affirmed.*

*McHenry & Bowers,* for appellant.

*Miller, Kelley, Shuttleworth & Seeburger,* for appellee.

EVANS, J.—The plaintiff is the father-in-law of the defend-
ant.   The contract between them was entered into on March 26,
1919.   The subject-matter thereof was the plaintiff's farm, of
160 acres.   The plaintiff was 77 years of age,

1. VENDOR AND
   PURCHASER:
   mental incapac-
   ity and undue in-
   fluence.

and had lived upon his farm for nearly 40
years.   His wife had died on December 22d pre-
ceding.  One week later, a son, residing in Texas,
died, and was brought home for burial.   Shortly thereafter, the
plaintiff became ill with influenza, and was under the care of
a physician.   He visited his physician at his office 5 or 6 times
in February, and on the 5th and 7th days of March.   The nego-
tiations for the sale of the farm between plaintiff and defendant
began in the early part of March.   The farm had been occupied
by the son Burt Geil as a renter, for the past seven years.   The
plaintiff, however, lived thereon in a separate house.   An un-
married daughter continued to live with him there, after his
wife's death.   The plaintiff had previously expressed a pur-
pose or desire to sell part of the farm.   The son-in-law, Smith,
lived upon his own farm, about a mile and a half away.   Two
sons, Fred and Arthur, lived in the near neighborhood; like-
wise, two married daughters.   The immediate occasion of the
beginning of negotiations by the defendant, Smith, for the
purchase of the farm, was that Smith had received an offer for
his own farm, and was disposed to accept the same only if he
could purchase the plaintiff's farm.   This fact was disclosed by
Smith to the plaintiff at the plaintiff's home.   The question of
value was discussed at that time, and participated in by the son
Fred and by the son-in-law Ash, both of whom were witnesses
on behalf of plaintiff.   The unmarried daughter was also present.
At this time, Smith, in effect, offered $300 an acre for the farm.
The negotiations continued, from time to time, until the date
of the signing of the contract.   In the meantime, the defendant

had sold his own farm by contract, with a reservation of the right of rescission, in the event that he should fail to purchase the plaintiff's farm. The parties met by appointment at the office of an attorney in Des Moines with whom both were well acquainted, the plaintiff appearing there first. The attorney acted for both parties, and the expense was divided between them. That the plaintiff was well satisfied with the transaction for several months after its occurrence is very clear. The first complaint communicated to the defendant was in July or August following. The contract provided for possession on March 1, 1920. In the spring seeding, clover seed had been furnished by the defendant, and the same had been sown in his behalf. Other requests of the defendant were complied with, looking to his plans for the following year. The controversy presents no disputable legal question. It is purely a fact case. In view of our agreement with the finding of the trial court, there is little occasion for an extensive discussion of the evidence. While the evidence is conflicting, at least in a qualified sense, the overwhelming weight of it is against the contention of plaintiff. We are clear that he did not lack mental capacity to enter into the contract, and that he was subject to no undue influence. His principal witnesses are two of the sons and the son-in-law. Their personal interests are considerably involved. One of the sons is the renter of the farm. The son-in-law had partially negotiated an agreement to move his family into the plaintiff's home, and to live with him. The price of the land, as fixed in the contract, is claimed to be inadequate. One son, and Mealey, a real estate agent, testified that the farm could have been sold for $350 per acre. The son-in-law fixed the price at $400, and the other son, at $500. The record discloses that, immediately following the making of this contract, there occurred a very pronounced increase in selling values of land. It is doubtless true that the farm could have been sold, a few months later, for a higher price than was received for it, and this fact of itself would naturally color opinion evidence. Approximate value is all that can be ascertained by the opinions of witnesses. A variance of $50 an acre in the value of high-priced land is not unusual, in the opinion of friendly witnesses, testifying in behalf of the same party. In this case, the variance between the witnesses of

the plaintiff amounts to $150. At the time this contract was entered into, no sales had been made in that vicinity at a price as high as $300. So far as the record discloses, the contract in question was entered into fairly and openly by the defendant, and willingly and intelligently by the plaintiff. The defendant sold his own farm for the very purpose of buying it, and the plaintiff knew that fact. Even if there were fair doubt of the plaintiff's mental capacity, it would be quite inequitable, in the absence of bad faith by defendant, to rescind the contract after the defendant had parted with his own farm, and his contract of sale had become irrevocable.

Some complaint is directed to the form of the decree. The defendant filed a defensive answer, and attached thereto a prayer for relief, asking confirmation of the contract and an injunction to restrain the plaintiff from interfering with the defendant's entering into possession. The decree appears to have been entered upon March 1, 1920, on which date the defendant was entitled, under the contract, to take possession. On the same day, the plaintiff perfected his appeal to this court. Whether he superseded the judgment below does not appear. If he did not, the question has become quite moot. The point made against the decree is that the defendant filed no cross-bill, and that he was not, therefore, entitled to affirmative relief. If the defendant had prayed no affirmative relief, and had obtained none, the effect of the decree, in dismissing the petition after a trial upon the merits, would be precisely the same as if the decree had formally confirmed the contract. This being so, the defendant was entitled to possession, and plaintiff could in no manner be harmed by the fact that the decree enjoined interference by him. Moreover, the trial court had a right to treat the prayer for affirmative relief as a cross-bill, if the facts actually pleaded supported such prayer for relief. Doubtless, a cross-bill in such form should be deemed lacking in appropriate form, and the plaintiff could have assailed it on that ground. He did not do so in the trial court. It is too late to do it here. *Knight v. Acton,* 187 Iowa 597. The decree is—*Affirmed.*

2. JUDGMENT: defensive answer as cross-bill.

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.